IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

---

ENCYCLOPAEDIA BRITANNICA, INC.,

        Plaintiff,

        v.

MAGELLAN NAVIGATION, INC.,
TOMTOM, INC., and AMERICAN TV &
APPLIANCE OF MADISON, INC.,

        Defendants.

MEMORANDUM AND ORDER

07-C-0285-S

---

    Plaintiff Encyclopaedia Britannica, Inc. ("Britannica") commenced this patent infringement action alleging that defendants Magellan Navigation, Inc. ("Magellan"), TomTom, Inc. ("TomTom") and American TV & Appliance of Madison, Inc. ("American TV") have infringed on Britannica's United States Patent numbers 7,051,018 and 7,082,437 (hereinafter the '018 patent and the '437 patent) as infringement is defined under 35 U.S.C. § 271. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1338(a). The matter is presently before the Court on defendants' motion to sever American TV and transfer venue to the United States District Court for the Western District of Texas pursuant to 28 U.S.C. § 1404(a). The following facts relevant to defendants' pending motion are undisputed.

BACKGROUND

    Plaintiff Britannica is incorporated in Delaware with its principal place of business in Chicago, Illinois. In October 1989 plaintiff applied for a patent on the user interfaces used to

search the databases in its electronic encyclopedia. Although plaintiff received United States Patent number 5,241,671 (hereinafter the '671 patent) on August 31, 1993 the patent was subject to a nine year reexamination process that led to a reexamination certificate for the '671 patent on July 2, 2002.

On May 16, 2005 plaintiff filed suit in the Western District of Texas against six defendants[1] alleging patent infringement of its '671 patent ("First Texas Case"). The First Texas Case was assigned to Judge Lee Yeakel. Although plaintiff does not manufacture navigation systems, the dispute involves whether the user interfaces used for searching navigational databases found in defendants' various electronic navigation system devices infringe on plaintiff's '671 patent. A <u>Markman</u> hearing was held on March 1, 2006 in the First Texas Case and discovery has been postponed until a claim construction order is issued by Judge Yeakel.

On May 23, 2006 plaintiff was issued the '018 patent and then on June 25, 2006 plaintiff was issued the '437 patent. Both the '018 and '437 patents claim priority based on the parent '671 patent and accordingly will expire in 2009. All three patents involve user interfaces used to search informational databases. Although all three patents share common claims, the '671 patent has

---

[1] The six defendants are: Alpine Electronics of America, Inc.; Alpine Electronics, Inc.; DENSO Corporation; Toyota Motor Sales, U.S.A., Inc.; American Honda Motor Co., Inc.; and Garmin International, Inc.

means plus function limitations and the other two do not. Also, the '018 and '437 patents have a narrower scope than the '671 patent. The '018 and '437 patents cover specific user interfaces that support (1) "a text search capability allowing a user to enter text to search for a place on a map," (2) "a text browse capability allowing the user to browse a list of places on a map," and (3) "a graphical search capability allowing the user to zoom or pan a displayed view of the map." (Pl.'s Resp. Br. 4.)

On the same day plaintiff obtained the '018 patent it amended its complaint in the First Texas Case to include allegations that all six defendants had infringed the '018 patent. Plaintiff's counsel asserted that addition of the '018 patent would not "really change[] a whole lot . . . because all of this case is simply about navigation systems. [T]hat's what these patents are directed to." (Pl.'s Resp. Br., Ex. I, at 9-10.)

Then, on the same day plaintiff obtained the '437 patent it filed a second suit in the Western District of Texas ("Second Texas Case") against the same six defendants named in the First Texas Case alleging patent infringement of the '437 patent. The Second Texas Case was considered related to the First Texas Case and therefore was also assigned to Judge Yeakel. Judge Yeakel has yet to specifically address the claims of either the '018 or '437 patents. Furthermore, discovery in both Texas cases has been

stayed pending Judge Yeakel's <u>Markman</u> and summary judgment rulings on the '671 patent.

On May 21, 2007 plaintiff filed suit in this district against defendants Magellan, TomTom, and American TV, none of whom are defendants in either of the Texas cases. Plaintiff alleged that defendants infringed the '018 and '437 patents. The complaint filed in this district contains identical allegations as those found in the complaints concerning the '018 and '437 patents in the Texas cases. This district is not plaintiff's home forum and it is not a district where plaintiff can boast of having any greater relationship or connectivity than it has with other districts.

Defendant Magellan is incorporated in Delaware with its principal place of business in Santa Clara, California. Defendant TomTom is incorporated in Massachusetts with its principal place of business in Concord, Massachusetts. Defendant American TV is incorporated in Wisconsin with its principal place of business in Madison, Wisconsin. Both Magellan and TomTom manufacture and sell portable navigation system devices. Their connection with this district is based solely on their products being sold here. American TV is a regional retailer of furniture, appliances and electronics and it has sold both Magellan and TomTom navigation system devices. American TV has not had any involvement with the development or manufacturing of the navigation system devices and

it does not sell a large volume of Magellan or TomTom navigation system devices.  (See Chan Aff. and Vigreux Aff.)

On July 13, 2007 defendants filed a joint motion to sever American TV from this case, stay the case against American TV and then transfer venue to the Western District of Texas.

## MEMORANDUM

Defendants argue that American TV is a peripheral defendant in this case and that the claims against American TV should be severed and stayed and that this case should be transferred to another venue. Defendants further argue that the Western District of Texas is the better venue for this case because consolidation of this case with the Texas cases would best serve the interests of justice by conserving judicial resources and avoiding inconsistent results. Conversely, plaintiff argues against transfer because the speed with which this case will proceed in this district best serves the interests of justice, and therefore defendants have failed to show that the Western District of Texas would be clearly more convenient.

A motion for transfer of venue is governed by 28 U.S.C. § 1404(a) which states: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." For transfer of venue to be proper it must be established that the case might have been brought in the

5

transferee district and that the transfer is for the convenience of parties and witnesses and in the interest of justice. See Coffey v. Van Dorn Iron Works, 796 F.2d 217, 220 (7th Cir. 1986). Here, both issues are in dispute.

 A. **Proper venue in the Western District of Texas**

  1. The Hoffman rule and exceptions

A case may be transferred to another district "where it might have been brought." 28 U.S.C. § 1404(a). Although the phrase "where it might have been brought" appears simple enough, the Supreme Court was called upon to interpret the phrase in Hoffman v. Blaski, 363 U.S. 335, 80 S. Ct. 1084, 4 L. Ed. 2d 1254 (1960). The Court reasoned that "where it might have been brought" means that the plaintiff has to have had the right to bring its case in the transferee district, which would require proper venue and personal jurisdiction over the defendants in the transferee district. Id. at 344.

Conversely, "where it might have been brought" did not mean "where it may now be rebrought, with defendants' consent." Id. at 342-43. This interpretation appeared to create the bright-line rule that if for any reason the plaintiff's exact same case could not be brought as a matter of right in the transferee district (e.g., due to a lack of personal jurisdiction over defendants or a lack of subject matter jurisdiction in the transferee district)

6

then the transferee district would not be a district "where it might have been brought" under 28 U.S.C. § 1404(a).

However, both the Supreme Court and other courts have carved out exceptions to the rule. There have been several circumstances where a common-sense approach in applying 28 U.S.C. § 1404(a) has required exceptions to the <u>Hoffman</u> rule, and accordingly transfer of a case to a particular district has not been barred even though the plaintiff could not as a matter of right have brought the same exact case in the transferee district. For example, in <u>Van Dusen v. Barrack</u>, the Supreme Court reasoned that even though the laws of the state where the transferee district was located would have disqualified plaintiffs from bringing the case in the transferee district, transfer was not barred when convenience and the interests of justice strongly favored transfer. 376 U.S. 612, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964).

Another exception is where "[c]ourts have authorized severance and transfer of claims as to less than all defendants in a multi-defendant suit upon a determination that the defendant as to whom venue is improper in the transferee district is only peripherally involved in the litigation," even though the plaintiff could not have brought its case (i.e., all its claims against all defendants) in the transferee district. <u>Siemens Aktiengesellschaft v. Sonotone Corp.</u>, 370 F. Supp. 970, 972 (N.D. Ill. 1973) (citations omitted). Moreover, the Seventh Circuit has concluded that to avoid injustice

7

"there is no absolute bar to the transfer of a multi-defendant suit to a district in which one of the defendants cannot be served." Wild v. Subscription Plus, Inc., 292 F.3d 526, 531 (7th Cir. 2002), cert. denied, 537 U.S. 1045, 123 S. Ct. 619, 154 L. Ed. 2d 517 (2002).

Finally, in Continental Grain Co. v. Barge FBL-585, the Supreme Court encountered unjust circumstances where a strict application of its reasoning in Hoffman would have defeated the purpose behind 28 U.S.C. § 1404(a). 364 U.S. 19, 80 S. Ct. 1470, 4 L. Ed. 2d 1540 (1960). Continental Grain Co. involved a plaintiff suing a barge and the owner of the barge in the United States District Court in New Orleans, and the barge owner argued for transfer of the case to the District Court of Tennessee because another action involving the sinking of the same barge was already underway there. Id. at 20-21. The plaintiff argued against transfer because the barge, which was considered a party unto itself under admiralty law, was located in New Orleans and the plaintiff could not have as a matter of right brought the case against the barge in the District of Tennessee. Id. at 22-23.

The Supreme Court took what it called a common-sense approach to applying 28 U.S.C. § 1404(a) by pointing out that the plaintiff had brought the barge owner into court in an inconvenient district by using the "admiralty fiction that a vessel may be assumed to be a person" and that including the barge as a defendant was done

solely for the purpose of insulating the case from being transferred to another district. Id. at 24-25. The Court went on to explain that

> [t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that section 1404(a) was designed to prevent. Moreover, such a situation is conducive to a race of diligence among litigants for a trial in the District Court each prefers. These are additional reasons why section 1404(a) should not be made ambiguous by the importation of irrelevant fictions.

Id. at 26. Accordingly, the Court held that 28 U.S.C. § 1404(a) had to permit this transfer "to protect litigants, witnesses and the public against unnecessary inconvenience and expense" and to avoid rewarding plaintiff for its manipulation of the parties in an attempt to insulate the case from transfer from an inconvenient forum. Id. at 26-27.

Based on these exceptions it follows that at its core a common-sense approach to applying 28 U.S.C. § 1404(a) requires that the phrase "where it might have been brought" not act as an absolute bar to transfer when the surrounding circumstances favor transfer to best serve convenience and/or the interests of justice, even when the plaintiff could not as a matter of right have brought the exact same case in the transferee district.

### 2. Application of "where it might have been brought" in this case

In this case, both sides allege that the Western District of Texas (the "transferee district") would not have the power to

9

exercise personal jurisdiction over American TV.² However, apart from the possibility that there is no personal jurisdiction over American TV, it is undisputed that the transferee district would be a district "where [this case] might have been brought." Accordingly, the <u>only</u> road block preventing plaintiff from the ability to bring this case as a matter of right in the transferee district is the inclusion of American TV as a defendant.

Similar to the barge in <u>Continental Grain Co.</u>, American TV was included as a defendant solely as an attempt to insulate this case from transfer. Although American TV's inclusion in this case is not based on fiction, its peripheral and insignificant role in this case makes it at most the shadow of a real party. For example, American TV's absence from the development and manufacturing of the allegedly infringing navigation system devices places it in a position where it cannot defend against the infringement claims, which are the core of this case.

Furthermore, the fact that American TV is not a large retail seller of the allegedly infringing devices lends support to the assertion that it is nothing more than a shadow party used to insulate this case from transfer. There is no doubt that there are

---

²Neither side presents any facts supported by affidavits to establish that there would be no personal jurisdiction over American TV in the Western District of Texas. A deeper inquiry may prove enough minimum contacts to provide personal jurisdiction, but that issue is not addressed here.

other larger retailers in this district (e.g., Wal-Mart, Target, Best Buy, etc.) with deeper pockets who sell much larger quantities of the allegedly infringing devices. Knowing this defendants have questioned why plaintiff would choose American TV as the sole retailer it sued for infringement. Although plaintiff failed to offer any response, the answer can be found in the fact that the larger retailers also sell the devices nationwide which would clearly subject them, and this case, to venue in other districts. There can be little doubt that plaintiff's real reason for choosing American TV was the hope that this shadow party would insulate the case from transfer.

Moreover, American TV's role in paying damages is insignificant for several reasons. First, if the navigation system devices are found to infringe on plaintiff's patents then defendants will owe plaintiff licensing fees or royalties because plaintiff does not produce or sell a product that directly competes with the navigation system devices sold by defendants, and plaintiff would only receive licensing fees from one link in the chain of commerce (i.e., either the manufacturer/developer or retailer). For example, if Magellan and TomTom have to pay a licensing fee for using the patents then American TV as a retailer would not have to also pay the licensing fee for selling products already licensed.

Second, although defendants may be jointly and severally liable if there is infringement, American TV does not sell a large volume of the allegedly infringing devices and is not one of the larger retailers with deep pockets and accordingly the circumstances do not support that it was included as a party to pay if the other two defendants could not. Third, as a retailer American TV would most likely be indemnified by Magellan and TomTom for the infringing products it sold. Thus, there is no support that American TV has anything other than an insignificant role in this case making it a mere shadow party.

In <u>Continental Grain Co.</u>, the Supreme Court reasoned that if it held that the transferee district was not a district where the case might have been brought then "[a]ll a plaintiff would need to do to escape from [the transfer statute] entirely would be to bring his action against both the owner and the ship, as was done here." 364 U.S. at 24-25. This case presents a similar situation. Were this Court to determine that the transferee district was not a district where the case might have been brought then a plaintiff would be permitted to entirely escape from the purview of the transfer statute by including as a defendant in its patent infringement action a more localized retailer who was of no importance to the actual outcome of the case.

Finally, severance of the shadow party and staying the case against it, as requested by defendants in this case, although

12

possible would also not best serve the transfer statute's purpose. Severance and stay of the claims against the shadow party would produce an unnecessary second case that, based on the insignificance of the shadow party, would serve no purpose. Also, the second case could remain on the transferor district's docket for an indefinite time. Therefore, it would better serve the interests of justice to allow the transfer of an entire case. See, e.g., Wild 292 F.3d at 530-31.

Accordingly, a common-sense application of 28 U.S.C. § 1404(a) guides this Court to conclude that for all intents and purposes the Western District of Texas is a venue where this case "might have been brought" within the meaning of § 1404(a).

> B. **Convenience of parties and witnesses in the interests of justice.**

A court's determination as to whether or not a case should be transferred does not end with finding proper venue in the transferee district. There must also be proof that the transferee district is "clearly more convenient." Coffey, 796 F.2d at 220. The Court must consider all the circumstances of the case, using the three statutory factors, "the convenience of parties and witnesses, in the interest of justice," as place holders in its analysis. Id. at 219.

None of the defendants can claim the transferee district as a home forum. Also, the Western District of Wisconsin is not plaintiff's home forum which means that plaintiff's choice in forum

13

receives no special deference. <u>Doagle v. Bd. of Regents</u>, 950 F. Supp. 258, 259 (N.D. Ill. 1997). The Court then accepts each party's assessment of its own convenience. Furthermore, no significant witnesses for whom in court testimony, as opposed to deposition testimony, would be necessary are located within either district. Accordingly, the convenience of the parties and witnesses does not weigh in favor of either district and does not clearly favor transfer. <u>See</u> <u>In re Nat'l Presto Indus., Inc.</u>, 347 F.3d 662, 665 (7th Cir. 2003).

Here, the interests of justice factor is determinative. <u>See</u> <u>Coffey</u>, 796 F.2d at 220. The interests of justice analysis involves the consideration of factors relating to "'the efficient administration of the court system' not to the merits of the underlying dispute." <u>Milwaukee Elec. Tool Corp. v. Black & Decker (N.A.) Inc.</u>, 392 F. Supp. 2d 1062, 1065 (W.D. Wis. 2005) (<u>quoting</u> <u>Coffey</u>, 796 F.2d at 221). For example, two permissible factors are the likelihood of a speedy trial and the feasibility of consolidation of related litigation. <u>Coffey</u>, 796 F.2d at 221.

Plaintiff argues against transfer based on its desire for the speediest trial, which it believes it will receive in this district. Plaintiff asserts speedy resolution is an important consideration in this case because the matter concerns its patent rights. This Court has reasoned before that

> the relative speed with which an action may be resolved
> is a potentially important consideration in patent cases

14

> particularly where a patent holder seeks to enjoin its competitors from using plaintiff's invention to gain a potentially irreversible advantage in the marketplace or where plaintiff seeks lost profit damages which are inherently difficult to prove.

Guardian Media Tech., Ltd. v. Mustek Sys., Inc., 440 F. Supp. 2d 937, 939 (W.D. Wis. 2006). However, those circumstances are not present in this case as plaintiff failed to present any evidence demonstrating that the parties sell competing products. Accordingly, plaintiff could be readily compensated by a reasonable royalty causing the speedy trial factor to carry less weight. See Matsushita Elec. Indus. Co. v. Siliconix Inc., No. 05-C-732-S, 2006 WL 517628, at * 5 (W.D. Wis. Mar. 2, 2006).

Defendants argue that transfer will serve judicial economy because this case can be consolidated with the related litigation continuing in the Western District of Texas. The transfer statute was created in part to prevent the waste of time, energy and money that is spent when two cases involving the same issues are before different district courts. Continental Grain Co., 364 U.S. at 26. Accordingly, judicial economy may be dispositive in determining whether the interests of justice warrant transfer. See 5 Robert A. Matthews, Jr., Annotated Patent Digest § 36:157 (2007).

Furthermore, there is an expectation that when a case is transferred to a district where related litigation is pending the two cases will be consolidated, if practicable, in accordance with Rule 42(a) of the Federal Rules of Civil Procedure. Abbott Lab. v.

Selfcare, Inc., No. 98-C-7102, 1999 WL 162805, at * 2 (N.D. Ill. Mar., 15, 1999). It is within a court's discretion to consolidate two actions involving common questions of law or fact. Am. Photocopy Equip. Co. v. Fair (Inc.), 35 F.R.D. 236, 237 (N.D. Ill. 1963). Also, transfer and consolidation helps limit the risk of inconsistent judgments by preventing duplicative litigation. Abbott Lab., 1999 WL 162805, at *2.

An examination of this case establishes that the facts and circumstances weigh heavily in favor of transfer to conserve judicial resources through consolidation. First, practicality of consolidation supports the Court's expectation that this case would be consolidated with either Texas case. All three cases involve common questions of law and fact concerning the three related patents and the alleged infringement of plaintiff's user interfaces used to search and retrieve different information. The two Texas cases were labeled as related by the district court in Texas and this case addresses the same patents. Also, all defendants in this case and the Texas cases manufacturer and/or sell similar infringing navigation system devices.

Although plaintiff argues[3] against consolidation based on Judge Yeakel having mentioned severing the claims concerning the

---

[3]The Court notes that although plaintiff argues against consolidation here, it specifically argued the opposite point concerning the '018 patent in effort to persuade Judge Yeakel not to sever the First Texas Case. (Pl.'s Resp. Br., Ex. I, at 9-10.)

16

'018 patent from the First Texas Case this argument does not persuade against transfer and consolidation. Were Judge Yeakel to sever the '018 patent claims from the First Texas Case it would be practical to consolidate those claims with the Second Texas Case, and accordingly this case could be consolidated with all the claims concerning the '018 and '437 patents.[4]

Second, discovery concerning the '018 patent and '437 patent has not begun in either Texas case leaving no indication that any party will be prejudiced by pretrial consolidation. Since the same or related patents are at issue it is probable that defendants from all cases will depose the same persons and request the same documents and technical drawings from plaintiff. Accordingly, coordinating discovery in one district would promote efficiency by avoiding duplication of discovery concerning the same patents.

Third, through a <u>Markman</u> hearing Judge Yeakel has already invested time learning the technology behind the '671 patent which as the parent patent will have some effect on the patent claims in this case and will allow a better understanding of the '018 and '437 patents. Fourth, if this case is not transferred and consolidated there is the risk that the same patents will be interpreted differently creating inconsistent claim construction

---

[4] At most transfer of this case would result in two cases involving related patents and the expense of time, energy and money by one district court as opposed to denying transfer and having three cases involving related patents and the expense of time, energy and money by two district courts.

rulings, piecemeal litigation and inconsistent judgments. See, e.g., <u>DataTreasury Corp. v. First Data Corp.</u>, 243 F. Supp. 2d 591, 596 (N.D. Tex. 2003).

Finally, transfer would stop plaintiff's forum shopping. By its own admission plaintiff believes the Texas cases have stalled. (Pl.'s Resp. Br. 1.) Plaintiff should not be permitted to start litigating infringement of its patents in one district and then after deciding that things were progressing too slowly or adversely be able to litigate infringement of the exact same patents in a new district by adding new but similar defendants. Regardless of where the Texas cases are procedurally, they have been pending for over two years and over one year respectively. To allow plaintiff to start anew in a different district would permit a type of forum shopping that would consume an unnecessary amount of judicial resources. Therefore, balancing the weight of receiving a speedier disposition in this district against the weight of transferring and consolidating this case with the cases in the Western District of Texas in an effort to conserve both judicial and litigant time, energy and money and to prevent forum shopping the scale is tipped overwhelmingly in favor of transfer.

A common-sense application of 28 U.S.C. § 1404(a) to the specific facts of this case establish that, not withstanding the possible lack of personal jurisdiction over American TV which in this specific case will not bar transfer, the interests of justice

weigh heavily in favor of transferring this case to the Western District of Texas as it is a clearly more convenient forum. Accordingly, defendants' motion to transfer venue to that district must be granted.

ORDER

IT IS ORDERED that defendants' motion to transfer venue to the United States District Court for the Western District of Texas is GRANTED as to all claims and defendants.

IT IS FURTHER ORDERED that defendants' motion to sever and stay is DISMISSED as moot.

Entered this 30th day of August, 2007.

BY THE COURT:

_____
JOHN C. SHABAZ
District Judge